IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| JAMES WOLLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:08cv1130 (JCC) |
| | ) | |
| | ) | |
| PETE GEREN, IN HIS CAPACITY | ) | |
| AS SECRETARY OF THE ARMY, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on a motion to dismiss the Amended Complaint by Defendant Pete Geren, sued in his official capacity as Secretary of the Army ("Defendant"). For the reasons stated below, the Court will grant Defendant's motion to dismiss.

### I.  Background

Plaintiff James Wollman ("Plaintiff"), an Army officer who was discharged without pay because of a physical disability that the Army determined was "Existing Prior to Service," brought this suit to seek review of the Army's decision that its Discharge Review Board lacks authority to review Plaintiff's

discharge.  The allegations in the Amended Complaint are as follows.[1]

Around October 2005, a Physical Evaluation Board found that Plaintiff's physical disability – the reason for his discharge – was "Existing Prior to Service."  Am. Compl. at ¶ 8. As a result of this finding, Plaintiff's discharge was classified as "without pay."  *Id.*  Following the Physical Evaluation Board's ruling, Plaintiff embarked on an administratively complex attempt to overturn the "without pay" status of his discharge.  He sought review by a number of administrative bodies within the Army and, ultimately, by this Court.

In November 2005, the United States Army Physical Disability Agency affirmed the findings of the Physical Evaluation Board.  *Id.* at ¶ 9.  From there, Plaintiff filed a petition with the Army Disability Review Board (the "Disability Review Board") pursuant to 10 U.S.C. § 1554.  He asked for a medical retirement from the Army, a finding that there had been a service-related aggravation of his condition, and a finding that his disabling condition was service-related, rather than "Existing Prior to Service."  *Id.* at ¶ 10.  The Disability Review Board denied all three requests and affirmed the findings of the

---

[1] Plaintiff filed the original complaint on October 28, 2008; Defendant moved to dismiss it on December 31, 2008.  Plaintiff submitted the Amended Complaint on January 11, 2009.  In an agreed order dated January 15, the parties set forth a briefing and argument schedule for Defendant's renewed motion to dismiss.

Physical Evaluation Board and the Physical Disability Agency. The Disability Review Board did not – and was not required to – discuss the legal basis for its decision. *Id.* at ¶ 17.

After this third rejection, Plaintiff asked the Army Review Boards Agency, which has jurisdiction over all of the Army's review boards, whether the Army Discharge Review Board (the "Discharge Review Board") would be able to review his case and change his discharge status to a discharge with pay, pursuant to 10 U.S.C. § 1553. *Id.* at ¶¶ 12, 15. Under Department of Defense Instructions ("DoDI") § 1332.28 E3.5.1, decisions by the Discharge Review Board must discuss the reasons for the Board's finding. *Id.* at ¶ 16.

A Legal Advisor to the Army Review Boards Agency told Plaintiff, via e-mail, that the role of the Discharge Review Board historically "does not include changing a non-medical retirement discharge to a medical retirement discharge when an honorable characterization of service was issued with that discharge." *Id.* at ¶ 19. The Legal Advisor noted, however, that Plaintiff could still appeal to the Discharge Review Board if he wanted to do so. Approximately two weeks later – on April 17, 2007 – Plaintiff appealed to the Discharge Review Board.

In October 2007, the Director of the Discharge Review Board sent Plaintiff a letter on Army Review Boards Agency stationery. The letter disapproved Plaintiff's request to have

3

the Discharge Review Board review his case.  It stated that the Army Review Boards Agency and the Office of the Secretary of Defense had determined that the Discharge Review Board did not have the authority to grant medical discharges.  The letter explained that Plaintiff could seek review by the Army Board for Correction of Military Records (the "ABCMR"), which *does* have "'clear statutory authority to review applications seeking correction of military records, to change discharge status to reflect medical separations, and to authorize disability retirement entitlements.'"  *Id.* at ¶ 22 (quoting the letter); *see* 10 U.S.C. § 1552.

Rather than seek review with the ABCMR, Plaintiff filed this suit.  He states three claims for relief, all brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. § 2201.[2]  First, Plaintiff seeks review of his discharge and a change to "discharge with pay" status by the Discharge Review Board, pursuant to what he claims is its statutory authority under 10 U.S.C. § 1553.  As part of this request, Plaintiff asks for a ruling that the Army Review Boards Agency and the Discharge

---

[2] Plaintiff's Opposition makes it clear that he does not rely on the Declaratory Judgment Act for subject matter jurisdiction.  Pl.'s Opp'n at 8. Instead, he relies on the APA.  *Id.*  Plaintiff cited the Declaratory Judgment Act in his pleading "solely for the purpose of informing the Court . . . that it may issue a declaratory judgment in this action."  *Id.*  Thus, if Plaintiff's claim is not subject to review under the APA, it must be dismissed in its entirety.

Review Board improperly determined that the Discharge Review Board lacks authority to review his discharge. *Id.* at ¶¶ 23-30. Plaintiff suggests that an "actual controversy" exists as to whether the requirements of 10 U.S.C. § 1222(a), which requires military review boards dealing with certain physical disability cases to convey their findings, conclusions, and reasoning, would apply to an appeal taken by Plaintiff to the ABCMR. *Id.* at ¶¶ 32-41. He asks the Court to declare that he is entitled to findings and conclusions on any decision made by the Discharge Review Board or the ABCMR. *Id.* at 9. Finally, pursuant to 10 U.S.C. § 1556, Plaintiff requests a copy of any correspondence and communications having to do with the contested decision that the Discharge Review Board could not hear his case. *Id.* at ¶¶ 42-48.[3] All of Plaintiff's claims depend on the availability of federal court review under the APA.

Defendant moved the Court to dismiss the Amended Complaint on January 16, 2009. Plaintiff opposed the motion on February 4, and Defendant submitted a reply brief on February 12. This motion is before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30

---

[3] Plaintiff does not argue that 10 U.S.C. § 1222, 10 U.S.C. § 1556, or the Declaratory Judgment Act provides an independent ground for federal review.

5

F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a
motion to dismiss, "the material allegations of the complaint are
taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421
(1969) (citation omitted).  Moreover, "the complaint is to be
liberally construed in favor of plaintiff."  *Id.*  A motion to
dismiss must be assessed in light of Rule 8's liberal pleading
standards, which require only "a short and plain statement of the
claim showing that the pleader is entitled to relief."  Fed. R.
Civ. P. 8.  While Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

        Pursuant to Rule 12(b)(1), a claim may be dismissed for
lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).
Defendants may attack subject matter jurisdiction in one of two
ways.  First, defendants may contend that the complaint fails to
allege facts upon which subject matter jurisdiction may be based.
*See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v.
Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780-81 (E.D. Va.
2002).  In such instances, all facts alleged in the complaint are
presumed to be true.  *Adams*, 697 F.2d at 1219; *Virginia v. United
States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).  Alternatively,
defendants may argue that the jurisdictional facts alleged in the

complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 781. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994). In either case, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219.

### III. Analysis

Defendant argues that the case against him must be dismissed for two reasons: first, Plaintiff does not ask for review of a final agency action, and second, Plaintiff has not exhausted his administrative remedies. Plaintiff claims that the action he complains of is a final decision by the Army and that, under *Darby v. Cisneros*, 509 U.S. 137 (1993), he is not required to appeal to the ABCMR before bringing his case to federal court.

The Court agrees with Defendant that Plaintiff brought his case to federal court prematurely. Taking jurisdiction over this matter and deciding the issues raised by Plaintiff would thrust the Court into the middle of the administrative review

system set up by the Army to adjudicate the discharge status of former service-members.  The jurisdictional decision Plaintiff complains of did not close off all avenues of review.  Instead, it simply directed him to appeal to a different administrative review board.  Further review by the Army may end with a decision in Plaintiff's favor on the merits of his appeal.

The Court finds that action by the judiciary at this interlocutory stage would be premature.  The decision Plaintiff complains of is not the kind of "final decision" subject to immediate review in the federal court.[4]  Because the Court finds that the case should be dismissed on finality grounds, it will not consider Defendant's exhaustion argument at this time.

A. <u>Final Agency Action</u>

The Administrative Procedure Act (the "APA") allows "[a] person suffering legal wrong because of agency action" to seek judicial review of the agency action.  5 U.S.C. § 702; *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882-83 (1990). Under the APA, a court can review an agency action only when a statute makes the action reviewable or the action was a "final agency action for which there is no other adequate remedy."  5

---

[4] The question of whether an agency action was "final" precedes the constitutional inquiry into whether standing exists under Article III.  *Long Term Care Partners, LLC v. United States*, 516 F.3d 225 (4th Cir. 2008) (citing *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 857 (4th Cir. 2002)).  As Plaintiff does not complain about a final administrative action subject to review under the APA, the Court does not address whether Plaintiff has met the "injury in fact" standing requirement.

U.S.C. § 704; *see Nat'l Wildlife Fed'n*, 497 U.S. at 882.  If the challenged agency action is not "final" under the APA, a court must dismiss the complaint for lack of subject matter jurisdiction.  *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004).  The party asserting jurisdiction under the APA shoulders the burden of proving the existence of such jurisdiction by showing that the challenged action is a "final agency action."  *Shipbuilders Council of Am., Inc. v. United States Dep't of Homeland Sec.*, 481 F. Supp. 2d 550, 555 (E.D. Va. 2007) (citation omitted).  Defendant claims that the decision that the Discharge Review Board is not the proper forum for Plaintiff's appeal cannot be considered a final agency action under the APA.[5]  Def.'s Mem. at 7.

Plaintiff argues that the contested decision is a final agency action subject to review because, in making the decision, the Discharge Review Board and the Army Review Boards Agency, in consultation with the Office of the Department of Defense, interpreted the Discharge Review Board's enabling statute to exclude cases like Plaintiff's.  That decision, Plaintiff suggests, was a "rule," and thus counts as a "final agency action" under the APA.  Pl.'s Opp'n at 3.  In support, Plaintiff cites *Rocky Mountain Oil & Gas Ass'n v. Watt*, 696 F.2d 734, 741

---

[5] Plaintiff agrees that "the determination by the Discharge Review Board is the only determination at issue in this matter."  Pl.'s Resp. at 3.

n.8 (10th Cir. 1982), in which the Tenth Circuit analyzed a Department of the Interior interpretation of the Federal Land Policy and Management Act of 1976.  As a preliminary matter, the *Rocky Mountain Oil & Gas* court held that the Department of the Interior's interpretation of the statute constituted a "final agency action" under the APA, because an agency interpretation of its enabling statute fits within the definition of a "rule" set out in 5 U.S.C. § 551(4).[6]  *Rocky Mountain Oil & Gas Ass'n*, 696 F.2d at 741 n.8.

Defendant correctly notes, however, that subsequent case law has sharpened the inquiry into what agency actions are considered "final" under the APA.  While an "agency action" can be an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act," under 5 U.S.C. § 551(13), an agency action is reviewable as "final" only if its impact is "'sufficiently direct and immediate.'"  *Franklin v. Massachusetts*, 505 U.S. 788, 796-97 (1992) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967)).  The "core question" is whether the action marks the agency's completion of "its decisionmaking process, and whether the result of that process is one that will directly affect the parties."  *Id.* at 797.  In a subsequent case, the Supreme Court explained that, generally,

---

[6] "'[R]ule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ."  5 U.S.C. § 551(4).

> [T]wo conditions must be satisfied for agency action to
> be 'final': First, the action must mark the consummation
> of the agency's decisionmaking process – it must not be
> of a merely tentative or interlocutory nature.  And
> second, the action must be one by which rights or
> obligations have been determined, or from which legal
> consequences will flow.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal

quotations and citations omitted); *see Invention Submission Corp.*

*v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (adopting language

from *Bennett v. Spear*).

Defendant argues that the Discharge Review Board's

decision was neither a decision "by which rights or obligations

have been determined, or from which legal consequences will

flow," nor a "consummation of the agency's decisionmaking

process."  *Bennett*, 520 U.S. at 177-78.

1. Whether Agency Action Determined Plaintiff's Rights
   or Obligations

A final agency action must do two things: it must

"signal[] the consummation of an agency's decisionmaking process

*and* give[] rise to legal rights or consequences."  *COMSAT Corp.*

*v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999) (emphasis

in original).  The factors relevant to determining whether an

agency action is "final" under the APA are explained in analogous

terms: "(1) whether the action is a definitive statement of the

agency's position; (2) whether the action had the status of law

and immediate compliance with its terms was expected; [and] (3)

whether the action had a direct impact on the day-to-day business of the plaintiff . . . ."  *Trinity Indus., Inc. v. Herman*, 173 F.3d 527, 532 (4th Cir. 1999).

Here, Plaintiff has conceded that the Discharge Review Board did not consider the merits of his claim.  Pl.'s Opp'n at 3.  Instead, he argues, the Discharge Review Board "ruled" that it did not have jurisdiction over the claim and directed Plaintiff to appeal to the ABCMR instead.  *Id.*; Am. Compl. at ¶¶ 21-22.  That decision, he contends, is a final action subject to review.  Plaintiff did not further elaborate this argument. One contention Plaintiff could have made is that the decision affected his legal right to appeal to the administrative body of his choice rather than to a different review board within the Army.

The Court does not agree that such a decision implicates the type of "legal right" that makes an agency action "final" under the APA.  The "legal rights or consequences" that make an agency determination "final" under the APA generally have an immediate legal impact on the party in question.  They usually require some positive action on the part of the affected party or a concrete and immediately-felt harm.  *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (explaining that an action is final when it has "direct and appreciable legal consequences"); *Natural Res. Def. Council v. E.P.A.*, 16 F.3d 1395, 1407 (4th Cir.

12

1993) (holding that an agency action was not final where it did
"not purport to create or establish rights or responsibilities
for any party" or "mandate legal action"); *cf. Consol. Gas Supply
Corp. v. Fed. Energy Regulatory Comm'n*, 611 F.2d 951, 958 (4th
Cir. 1979) ("[N]o court, having the power of review of the
actions of an administrative agency, should exercise that power
to 'review mere preliminary or procedural orders or orders which
do not finally determine some substantive rights of the
parties.'" (quoting *Atlantic Seaboard Corp. v. Fed. Power Comm'n*,
201 F.2d 568, 572 (1953) (alteration omitted))).

For example, in *Bennett v. Spear*, the Supreme Court
held that a Biological Opinion of the Fish and Wildlife Service
that had "a powerful coercive effect" on the actions taken by the
Bureau of Reclamation was a "final" action.  The Biological
Opinion determined the rights and obligations of the Bureau and
"alter[ed] the legal regime to which the [Bureau] is subject."
520 U.S. at 168-170, 178.

Here, in contrast, the contested decision did not
change the substantive rules that apply to Plaintiff and had no
concrete effect on his legal rights.  It was not "coercive" – it
did not force Plaintiff to take any action whatsoever.
Crucially, the Army's direction to appeal to a different
administrative body did not adversely affect Plaintiff's
underlying claim.  While it may have affected his right to have a

13

particular board hear his case, it did not foreclose review.
Instead, it merely directed Plaintiff to appeal to a different
appellate body – one whose final decisions are subject to
judicial review under the APA. *See Clinton v. Goldsmith*, 526
U.S. 529, 539 (1999) (stating that certain decisions of Boards of
Correction for Military Records can be challenged as final agency
actions under the APA, and collecting cases).

In a case with some procedural similarities to the case
at bar, *Chamblee v. Espy*, the Fourth Circuit explained that the
Farmers Home Administration's decision to suspend the plaintiff's
appeal constituted a reviewable action.  The court considered the
ostensibly procedural decision "final" because it would have
forced the sale of the plaintiff's farm, which would, in effect,
deny the plaintiff's pending application for a loan restructuring
related to the farm.  100 F.3d 15, 17-18 (4th Cir. 1996).  The
procedural decision had a concrete and dispositive effect on the
plaintiff's legal rights and obligations – it clearly affected
the outcome of the underlying administrative action.  In the
present case, the procedural decision simply directed Plaintiff
to a different reviewing body.  Rather than state that the Army
would not review his claim, it pointed the way toward such
review.

Additionally, Plaintiff did not need to appeal to
federal court to preserve his objection to the contested

14

decision.  The APA specifically provides that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."  5 U.S.C. § 704.  Thus, denying Plaintiff the ability to contest the statutory mission of the Discharge Review Board at this point does not foreclose eventual review of the question.

Finally, Plaintiff's contention that the ABCMR will not issue reasons for its decision under 10 U.S.C. § 1222(a) is based only on his *anticipation* of what could happen when and if he appeals to the ABCMR.  Am. Compl. at ¶ 39.  This procedural posture neatly illustrates why federal courts review only final agency actions unless otherwise authorized by statute.  In order to make out some "injury" to his rights from which legal consequences will flow, Plaintiff can only speculate about a potential harm two steps removed from the case at it now stands. Plaintiff would only be "injured" in the way he presupposes if the ABCMR decided against him *and* failed to state the reasoning for its decision.

Plaintiff offers nothing but conjecture to support his view that the ABCMR will offer a justification for its decision inferior to those regularly offered by the Discharge Review Board.  In fact, a perusal of the regulations governing the ABCMR shows that Plaintiff is mistaken in assuming that the ABCMR would make an unsupported finding against him: "[t]he ABCMR's findings,

recommendations, and in the case of a denial, the rationale will be in writing." 32 C.F.R. § 581.3(g)(1). Thus, the possibility that the ABCMR would justify its decision in a qualitatively different manner than the Discharge Review Board is purely hypothetical and, in light of § 581.3, contrary to the regulations governing the ABCMR.

In short, Plaintiff complains about an intermediate procedural decision with no effect on the merits of his underlying claim. This is not the kind of "final agency action" reviewable by a federal court. Any federal court investigation into the jurisdiction of the Discharge Review Board must wait until the Army takes some final and determinative step with immediate and concrete legal consequences for Plaintiff. Federal court interference with the system of review set up by the Army would be premature and inappropriate at this point.

2. <u>Whether the Agency Action Was the Consummation of its Decision-Making Process</u>

Defendant also argues that Plaintiff's suit is subject to dismissal because the decision at issue did not represent the "consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). In a case subsequent to *Bennett*, the Court stated that an agency takes a "final" action only if it "'has rendered its last word on the matter in question.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478

16

(2001) (quoting *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 586 (1980)).

Plaintiff claims that he received a letter from the Director of the Discharge Review Board containing a statement that the Army Review Boards Agency, "in coordination with the Office of the Secretary of Defense . . . has determined the [Army Discharge Review Board] lacks authority to grant medical discharges." Am. Compl. at ¶ 21. The letter directed Plaintiff to appeal to the ABCMR as the proper authority authorized by statute to hear his case. *Id.* at ¶ 22. An earlier e-mail from an Army Review Boards Agency Legal Advisor told Plaintiff that the mission of the Discharge Review Board "does not include changing a non-medical treatment retirement discharge to a medical retirement discharge when an honorable characterization of service was issued with that discharge." *Id.* at ¶ 19.

At this stage of the proceedings, the Court will assume *arguendo* that the letter on Army Review Boards Agency stationery is an official determination of the jurisdictional scope of the Discharge Review Board, which purportedly cannot hear cases like Plaintiff's. The letter also has a procedural aspect: it tells Plaintiff which review board he should appeal to.

Defendant argues that the letter is not the "last word" on Plaintiff's case, because Plaintiff still has the right to appeal to the ABCMR, and thus the letter cannot be the

17

"consummation of the agency's decisionmaking process."   Def.'s
Reply at 4.   Whether the intermediate jurisdictional decision at
issue was a "consummation of the agency's decisionmaking process"
under the relevant jurisprudence, however, is a closer question
than Defendant makes it out to be.   Defendant's argument presumes
that the only decision that matters is a decision on the merits –
on which, clearly, no final decision has been reached.   Plaintiff
suggests, to the contrary, that the jurisdictional determination
is a *separate* agency action subject to immediate review.

That the parties argue past one another is not
surprising.   The case comes to this Court in a fairly unique
procedural posture for which case law on "consummation of the
decision-making process" provides only indirect guidance.   Simply
put, most administrative appellants in Plaintiff's position would
have seen the Army's letter as a helpful guide through the
administrative thicket of the discharge review process.   Instead,
Plaintiff challenged the letter as a "final agency action"
subject to review, possibly due to his misunderstanding of the
extent to which the ABCMR documents its findings.   *See supra* at
III.A.1.   The wisdom of Plaintiff's litigation strategy, however,
is not at issue.   The Court will analyze separately whether the
contested decision was the "consummation" of the Army's decision-
making process.

As an alternative basis for dismissal, the Court agrees with Defendant that the intermediate decision at issue is not a final agency action because it is not the relevant consummation of the Army's decision-making process.[7]  Even if Plaintiff correctly argues that he cannot further appeal the decision within the Army, the debate over the jurisdiction of the Discharge Review Board is subsidiary to the question whether Plaintiff has a viable claim within the Army's administrative appeals process.  In other words, further proceedings within the Army may yet determine the merits of Plaintiff's underlying claim; if Plaintiff is injured by this ultimate determination, he is free to file suit in federal court, at which time he can challenge the procedural determination he complains of here along with the determination on the merits.  *See* 5 U.S.C. § 704.

While they are not precisely on point, several patent decisions shed light on the non-reviewable nature of interlocutory decisions that do not conclusively determine the merits of an administrative action.  In *Bally Manufacturing Corp. v. Diamond*, the Fourth Circuit held that the plaintiff's suit, which challenged an intermediate decision allowing a patent

---

[7] The question before the Court does not require it to rule that it can review a challenged action as "final" *only* if the action decides the merits of the underlying administrative appeal.  As explained below, the decision Plaintiff challenges is genuinely preliminary to the merits of his case. Thus, while it may have been in some sense a separate agency action, it was subsidiary to, rather than truly independent of, Plaintiff's underlying claim.

reissue application to go forward, was properly dismissed for lack of jurisdiction because it was brought prematurely.  629 F.2d 955, 959 (4th Cir. 1980).  The plaintiff in *Bally Manufacturing*, concerned that a patent examiner would consider certain potentially harmful evidence in deciding the reissue application, sought federal review.  Explaining that the question posed was not ripe for decision, the court noted that "[t]he allegedly illegal procedure has not yet been applied to [the] reissue application."  *Id.*  Even if the patent examiner proceeded with the examination, the court stated, "the entire dispute will become moot if the examiner finds Bally's original patent valid." *Id.* at 959-60.  Thus, "[a]s yet [the plaintiff] has suffered no legal wrong nor felt in any concrete way adverse effects from the order of the Assistant Commissioner."  *Id.* at 960.

Likewise, in the present case, the "allegedly illegal procedure" that Petitioner fears – that the ABCMR will decide his appeal without providing written support for its legal conclusions comparable to that provided by the Discharge Review Board – has not yet come to pass.[8]  Additionally, Petitioner has not yet suffered a legal wrong or "felt in any concrete way adverse effects" from the decision at issue.

---

[8] And, in light of the regulations governing the ABCMR, such an unsupported decision is not likely.  32 C.F.R. § 581.3.

Similarly, in *Heinl v. Godici*, 143 F. Supp. 2d 593, 598 (E.D. Va. 2001), the court refused to look into a decision by the United States Patent and Trademark Office ("USPTO") that allowed a patent reexamination to proceed.  The court explained that it lacked jurisdiction over the case: the complained-of decision was "intermediate or preliminary" because the USPTO had not yet reached a final decision on the merits.

The acting director of the USPTO, based on his interpretation of existing law, made a procedural decision that allowed the patent reexamination at issue to continue.  That decision, similar to the one complained of here, came from the head of the agency, relied on an interpretation of the law applicable to the challenged administrative procedure, and affected the review procedure rather than the merits of the underlying claim.  *Id.* at 595.  Because the plaintiff could still win on the merits – which "would moot the question whether the initial decision to grant reexamination was correct" – the court decided that the USPTO's initial decision to allow reexamination was not a "final agency action."  *Id.* at 598.

Several noticeable differences between the administrative procedure for patent examinations and for the review of military discharges, including the additional levels of review available to the patentee, make *Heinl* factually distinguishable from the instant case.  *See id.*  But the

21

animating principle in *Heinl* – that judicial review of an agency's procedural determination would be premature when pursuing further avenues of review could lead the plaintiff to a victory on the merits – applies *a fortiori* to the present case.

In *Heinl*, a different decision by the USPTO director would have given the plaintiff exactly what he sought: foreclosure of the patent reexamination that challenged his intellectual property.  In the present case, by contrast, the decision at issue did not come so close to the merits.  It was even more preliminary, and even further removed from affecting the outcome of Plaintiff's substantive appeal, than the challenged decision in *Heinl*.  A decision that the Discharge Review Board *could* hear Petitioner's case would only provide him with an additional forum.  It would not grant the substance of his appeal.  Indeed, it would be wholly preliminary to a victory on the merits.  When compared with the USPTO's determination in *Heinl*, then, the decision that Petitioner should appeal to the ABCMR rather than the Discharge Review Board presents an even clearer example of a preliminary, procedural decision not subject to review as a "final agency action."

Petitioner, it should be noted, has not pointed to any on-point case decided in his favor.  Additionally, while Petitioner argues that the Discharge Review Board should have jurisdiction over his appeal, he has never suggested that the

22

ABCMR does not also have jurisdiction.  If Petitioner appeals to the ABCMR, the ABCMR will either affirm the finding that his discharge was properly made without pay or reverse the earlier administrative decisions and grant Petitioner the discharge with pay that he seeks.

Should he win on the merits, any question about the Discharge Review Board's jurisdiction over his case would be moot.[9]  If he loses, Plaintiff can appeal the ABCMR's decision in federal court, *see Clinton v. Goldsmith*, 526 U.S. 529, 539 (1999), along with the earlier procedural determination he complains of here, *see* 5 U.S.C. § 704.  Thus, the decision at issue has not yet caused Plaintiff any unreviewable injury.  Any harm it did cause is purely hypothetical and may be mooted by a favorable appeal to the ABCMR.

In addition, the contested decision was salutary rather than punitive: it provided Plaintiff with guidance about the correct administrative body to which he should bring his case. Such guidance, even in the form of a decision on administrative jurisdiction, should not be held against the Army at this stage. Doing so would needlessly interfere with the Army's prerogative to set up a workable administrative appeals system.

---

[9] Additionally, related questions about whether Discharge Review Board jurisdiction should be concurrent with that of the ABCMR and, if so, about what person or entity should decide which forum is appropriate in each case, would also be moot.

In summary, the agency action complained of here is not "final" in a manner that would allow what amounts to interlocutory federal court review of an uncompleted administrative process.  The challenged decision did not affect Plaintiff's rights or create legal obligations in a manner that makes the decision reviewable, at least at this point.  It was also not a relevant consummation of the Army's decision-making process.  For each of these reasons, the Court must dismiss Plaintiff's Amended Complaint.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss.

An appropriate Order will issue.


March 17, 2009                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE

24